PAOLA M. ARMENI, ESQ.
Nevada Bar No. 8357
WILLIAM D. SCHULLER, ESQ.
Nevada Bar No. 11271
**CLARK HILL PLC**
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
Telephone: (702) 862-8300
E-mail: parmeni@clarkhill.com
           wschuller@clarkhill.com

Attorneys for Plaintiffs,
LANDON REYES and
ALEJANDRA ZAMBRANO

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### * * *

| | |
|---|---|
| LANDON REYES, an individual; and ALEJANDRA ZAMBRANO, an individual, | CASE NO. |
| Plaintiffs, | **COMPLAINT WITH JURY DEMAND** |
| vs. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of Clark County Nevada; UNDERSHERIFF ANDREW WALSH, an individual; LAS VEGAS POLICE PROTECTIVE ASSOCIATION; STEVEN GRAMMAS, an individual; SCOTT NICHOLAS, an individual; BRYAN YANT, an individual; DANIEL COYNE, an individual; JOHN ABEL, an individual; GREGORY STINNETT, an individual; and DOES I through X, inclusive, | |
| Defendants. | |

///

///

///

ClarkHill\103565\1010715\286490437.v1-2/13/26

COMES NOW Plaintiffs LANDON REYES ("Captain Reyes") and ALEJANDRA ZAMBRANO ("Sergeant Zambrano") (collectively, "Plaintiffs"), by and through their undersigned attorney at Clark Hill PLC, and hereby complain and allege against Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT ("LVMPD"), UNDERSHERIFF ANDREW WALSH, LAS VEGAS POLICE PROTECTIVE ASSOCIATION ("LVPPA"), STEVEN GRAMMAS, SCOTT NICHOLAS, BRYAN YANT, DANIEL COYNE, JOHN ABEL, and GREGORY STINNETT (collectively, "Defendants"), as follows:

## INTRODUCTION

This case involves an unlawful campaign, involving LVPPA and its leadership, to target, silence, and publicly discredit and humiliate a career law enforcement officer for engaging in protected free speech and carrying out his job duties and responsibilities.  After Captain Reyes addressed matters of public concern and made internal operational decisions, union leadership responded not through established internal grievance procedures, but rather through a public smear campaign, including a mobile billboard displaying his photograph and unjustly questioning his fitness to serve as a law enforcement officer.

LVMPD leadership enabled and contributed to the attack on Captain Reyes.  Rather than protecting its employee, LVMPD created a hostile work environment.  Along those lines, Undersheriff Walsh prohibited Captain Reyes and Sergeant Zambrano from publicly responding to the smear campaign, allowing the false and damaging narrative LVPPA created to persist unaddressed.  As senior officials ratified and enforced this prior restraint and aligned themselves with the union's retaliatory conduct, LVMPD is liable under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

In addition to violating the United States Constitution and the Nevada Constitution, Defendants' conduct constitutes defamation, intentional infliction of emotional distress, invasion of privacy, negligence, and civil conspiracy under Nevada law.  As a direct result, Captain Reyes and Sergeant Zambrano suffered significant damages, including for reputational harm, humiliation, and emotional distress.

ClarkHill\103565\1010715\286490437.v1-2/13/26

## JURISDICTION AND VENUE

1.      This is a civil action for damages under federal and state law brought, in part, pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights secured by the Constitutions of the United States of America and State of Nevada.

2.      This Court has original jurisdiction of this action pursuant to 28 U.S.C.§ 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.  This Complaint is timely filed within the applicable statute of limitations period.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

4.      The instant Complaint is filed within the applicable statutes of limitations.

5.      On any issue herein triable of right by a jury, Plaintiffs demand a jury pursuant to FRCP 38.

## THE PARTIES

6.      Plaintiffs are husband and wife and have a combined 36 years of public service to the Las Vegas community as LVMPD officers.

7.      Captain Reyes is an individual residing in Clark County, Nevada.

8.      Sergeant Zambrano is an individual residing in Clark County, Nevada.

9.      LVMPD is a political subdivision of Las Vegas, Nevada and Clark County, Nevada.

10.      Undersheriff Walsh was appointed to his position in 2023 and acts as the second-in-command at LVMPD, assisting with executive duties. Upon information and belief, Undersheriff Walsh is an individual residing in Clark County, Nevada. Walsh is being sued in his personal capacity.

11.      LVPPA is a Nevada nonprofit corporation.

12.       Grammas is a member of the LVPPA's Executive Board and holds the official title of President.  Upon information and belief, Grammas is an individual residing in Clark County, Nevada.

13.      Nicholas is a member of the LVPPA's Executive Board and holds the official title of Vice President.  Upon information and belief, Nicholas is an individual residing in Clark County, Nevada.

ClarkHill\103565\1010715\286490437.v1-2/13/26

14.     Yant is a member of the LVPPA's Executive Board and holds the official title of Sergeant-at-Arms.  Upon information and belief, Yant is an individual residing in Clark County, Nevada.

15.     Coyne is a member of the LVPPA's Executive Board and holds the official title of Treasurer.  Upon information and belief, Coyne is an individual residing in Clark County, Nevada.

16.     Abel is a member of the LVPPA's Executive Board and holds the official title of Director of Governmental Affairs.  Upon information and belief, Abel is an individual residing in Clark County, Nevada.

17.     Stinnett is a member of the LVPPA's Executive Board and holds the official title of Director.  Upon information and belief, Stinnett is an individual residing in Clark County, Nevada.

18.     Grammas, Nicholas, Yant, Hamm, Coyne, Abel, and Stinnett are collectively referred to herein as "Executive Board Defendants."

## FACTUAL ALLEGATIONS

19.     Captain Reyes and Sergeant Zambrano met eighteen years ago at the LVMPD Police Academy.  Two idealistic officers drawn to a shared commitment to public service.  They married, are raising two teenage sons, and devoted their professional lives to LVMPD and the Las Vegas community.  Throughout their careers, they served with integrity, humility, and honor.

20.     Captain Landon Reyes is a public employee who protects the citizens of Clark County.  He is not an elected or appointed official.  His employment is part of the rank and file of the LVMPD.  Captain Reyes has served the Las Vegas community for nearly 20 years and was assigned to the South-Central Area Command ("SCAC") during the relevant time.

21.     Sergeant Alejandra Zambrano is also a public employee who protects Clark County's citizens.  She is not an elected or appointed official.  Sergeant Zambrano is currently awaiting promotion to the position of Police Lieutenant.

22.     Sergeant Zambrano and Captain Reyes met eighteen years ago at the LVMPD Police Academy.  Two idealistic officers drawn to a shared commitment to public service.  They married, raised two children, and devoted their professional lives to LVMPD and the Las Vegas

ClarkHill\103565\1010715\286490437.v1-2/13/26

community.  Throughout their careers, they served with integrity, humility, and honor.

23.    In May or June of 2025, Captain Reyes was told that the LVPPA had complained to Sheriff Kevin McMahill about Captain Reyes.  The complaints were related to: (1) detectives wearing uniforms for the wash project; and (2) the desk movement of Patrol Detective Sergeants within the substation.  The desk movement was based on concerns Captain Reyes had regarding sergeant attendance issues, proxy access, and police officer feedback that there were not enough computers.

24.    During discussions with his chain of command, including Undersheriff Andrew Walsh, Captain Reyes was told that these are management rights, not collective bargaining issues. He was told by his chain of command to keep doing what he was doing.  If the LVPPA had concerns regarding Captain Reyes' decisions, they could file a grievance, a lawsuit, a statement of complaint, or speak directly to Captain Reyes, as LVMPD employees need to be held accountable. LVPPA took no such action.

25.    On July 3, 2025, during a standard dayshift briefing at SCAC, Captain Reyes was present as a LVMPD sergeant led the briefing and played a video message from Sheriff McMahill. The video focused on LVMPD's financial status, the LVPPA's strike plan, and recent litigation. During this briefing, both Captain Reyes and the dayshift sergeant asked for the officer's feedback. The officers in the briefing room expressed disappointment with the LVPPA for promoting a potential strike on Independence Day and the current salary structure.  Defendant GRAMMAS alleged that Captain Reyes made disparaging remarks about the LVPPA, salary issues, and the potential strike in this briefing.

26.    As a result of the alleged remarks by Captain Reyes, Defendant GRAMMAS contacted Sheriff McMahill.  Captain Reyes was told by his chain of command to wait at SCAC for a meeting to take place with Defendant GRAMMAS and Captain Reyes' supervisors.  The purpose of the meeting was to clarify what Captain Reyes did and did not say during the morning briefing. Defendant GRAMMAS cancelled the meeting.

27.    On the afternoon of July 15, 2025, Captain Reyes was informed by a LVMPD Lieutenant that the LVPPA planned to place signage outside SCAC that was disparaging to

ClarkHill\103565\1010715\286490437.v1-2/13/26

Captain Reyes.  Captain Reyes immediately informed his chain of command and expressed his intent to file a formal complaint with LVMPD's Internal Affairs Bureau regarding the union's conduct and the retaliatory environment it was fostering.  Captain Reyes was instructed to stand down and was expressly prohibited from pursuing an internal affairs complaint.  His supervisors advised that they would speak with executive board members of the LVPAA, specifically Defendants ABEL and STINNETT.

28.    Defendants Abel and Stinnett advised Captain Reyes' chain of command that the LVPPA was not planning to do the sign but threatened that other action could be taken. Captain Reyes' chain of command asked Defendants Abel and Stinnett to advise on the actual complaints and why the LVPPA did not contact Captain Reyes earlier to resolve any perceived issues or complaints.

**July 16, 2025 – Mobile Billboard**

29.    However, on July 16, 2025, Captain Reyes became the target of a public smear campaign.  A mobile billboard was placed on SCAC's property, directly next to the employee entrance gate, so incoming and outgoing employees could see it.  The mobile billboard had a picture of Captain Reyes with statements including "Morale Killer," "Do Not Support LVMPD's Captain Landon Reyes," and "Morale plummets under his leadership."  An LVPPA insignia was also included as a graphic on the mobile billboard to display who paid for it.

/ / /

/ / /

/ / /

ClarkHill\103565\1010715\286490437.v1-2/13/26



30.     LVPPA Executive Board members ABEL, STINNETT, YANT, and COYNE were also present outside the entrance gate, attempting to greet LVMPD SCAC employees.  These Board Members also approached Captain Reyes' department vehicle upon his arrival at work that morning.  When the Board Members realized it was Captain Reyes in the vehicle, they immediately backed away and began laughing among themselves.

31.     Captain Reyes attended the dayshift briefing as normal and addressed the LVPPA billboard with SCAC employees.  The employees in the briefing room consisted of commissioned (officers) and civilian personnel (front office staff).  Upon Captain Reyes trying to elicit feedback from the employees, multiple officers, who are LVPPA members, shared their non-support of the LVPPA's tactics.  In fact, these LVPPA members expressed their displeasure that their union dues were used in this manner, as did the sergeant who was leading the briefing room discussion.

32.     The entire briefing room of employees suggested taking a picture with Captain Reyes in front of the mobile billboard to show their continued commitment to Captain Reyes.  Upon information and belief, officers from other substations also expressed disapproval that their union dues would be utilized for the billboard.

---

[1] Courtesy of L.E. Baskow/Las Vegas Review Journal, as published online.  *See* www.reviewjournal.com/local/local-las-vegas/morale-killer-las-vegas-police-union-uses-moving-billboard-to-slam-captain-3397296/ (last accessed February 12, 2026).

ClarkHill\103565\1010715\286490437.v1-2/13/26

33.    Captain Reyes would later meet with Sheriff McMahill and his Chief at SCAC after the dayshift briefing.  The purpose of the meeting was to clarify any missing details that would have prompted such an "outlandish" response by the LVPPA.  At the conclusion of the meeting, no additional details were obtained, and the Sheriff instructed Captain Reyes to contact Defendant GRAMMAS directly to schedule a meeting to resolve the matter.

34.    Captain Reyes departed SCAC and drove to LVMPD's Headquarters (HQ) for the weekly ACTION Meeting. The mobile billboard would follow Captain Reyes and was relocated to the parking lot across the street from HQ, where it was on display for the public and employees.

35.    Captain Reyes and Sergeant Zambrano were separately contacted by LVMPD's Public Information Office ("PIO") and instructed not to comment publicly.  Concurrently, the PIO was on information and belief directed not to respond to any media inquiries regarding Captain Reyes or the situation, allowing false and damaging narratives to remain unchallenged.  The PIO is directly overseen by Undersheriff Walsh.

36.    The billboard and the actions of the LVPPA caused Captain Reyes and Sergeant Zambrano humiliation, embarrassment, and emotional distress.

**July 17, 2025 – First Meeting with Undersheriff Walsh**

37.    On July 17, 2025, Captain Reyes was ordered to meet with Undersheriff Walsh, his Deputy Chief, and Defendant GRAMMAS.  When the meeting began with all parties, Defendant GRAMMAS stated that the billboard was not personal; it was just business. Defendant Grammas openly threatened Captain Reyes that, if necessary, more tactics would be forthcoming, including the mobile billboard.  He also stated that the mobile billboard was based on Captain Reyes' alleged comments about the LVPPA and threatened to continue the public campaign.

38.    Defendant GRAMMAS revealed in the meeting that the LVPPA had been tracking him since March of 2025.  In March, Captain Reyes reported sexual misconduct with the LVMPD's Employment Diversity Section (EDS) regarding another officer.    Defendant GRAMMAS added that the reason they tracked him was that Captain Reyes had sent a department email to SCAC, making everyone aware that the unprofessional sexual misconduct comments would not be tolerated, and if anyone had been offended, to see him.

39.     Defendant GRAMMAS continued to state that the LVPPA did not need to go directly to Captain Reyes about any concerns they had but could go right to the top of the department whenever they wanted. Defendant GRAMMAS added that he did not care if Captain Reyes had operational justifications for his administrative decisions.  Defendant GRAMMAS, at one point, stated that Captain Reyes and Sheriff McMahill were not intelligent enough to discuss pay negotiations and should just remain quiet.  Defendant GRAMMAS added that the sheriff did not know "what the hell he was talking about" when Captain Reyes referenced a department-wide video the sheriff completed related to the financial status of LVMPD.  The meeting did not end in a resolution.  As Defendant GRAMMAS stood up to leave, he told the undersheriff that he could tell he was visibly upset and that he (undersheriff) knew the billboard was coming for days.

40.     During that meeting, Undersheriff Walsh allowed Defendant GRAMMAS to demean and threaten Captain Reyes openly.  At no point did Undersheriff Walsh attempt to de-escalate the meeting, correct Grammas, or protect Captain Reyes from this abusive conduct.  Instead, Undersheriff Walsh compounded it.  Undersheriff Walsh berated Captain Reyes, stating, "You just couldn't let them (LVPPA) fucking win, could you?  You are a stupid, stubborn fuck, and a waste of my time."   Undersheriff Walsh further escalated his conduct, remarking that "nobody gives a fuck about your family" after Captain Reyes expressed concern about the impact of the billboard on his family, including family members who the LVMPD also employs.  These statements underscored Undersheriff Walsh's hostility toward Captain Reyes for refusing to capitulate to the union's public attack.  It reinforced the perception that senior leadership aligned itself with the LVPPA rather than protecting its own employees.

41.     Following this meeting, Captain Reyes was left with a clear, devastating message: LVMPD leadership would neither support nor protect him.  He felt a profound sense of rejection. Feeling like he had no other choice, Captain Reyes began to explore the possibility of early retirement.  Before any retirement decision was finalized, both Captain Reyes' and Sergeant Zambrano's access to LVMPD headquarters was revoked.

42.     Thereafter, Defendant GRAMMAS, individually and on behalf of the LVPPA, continued his public campaign against Captain Reyes in the media, including that the billboard

1  was "something fairly outlandish."  Defendant GRAMMAS acknowledged that no grievances had

2  been filed with LVMPD against Captain Reyes, as there were no disciplinary or contract-violation

3  issues.  Defendant GRAMMAS stated, (1) "We had multiple complaints from our officers, our

4  detectives, and honestly supervisors who work directly under him about his decisions and the

5  direction that he's having the officers go." (2) "One lieutenant had made mention that he had a

6  conversation with the captain and the captain went into a briefing room and derogatorily spoke

7  about that lieutenant to the troops." (3) "We also had some information from folks in the briefing

8  rooms that the was going in and talking about the PPA specifically, making references to the

9  lawsuit that our officers won for overtime pay, which was $19 million, and alluding to where's the

10 money." (4) Cops have been wronged by Landon Reyes and (5) Reyes treats his subordinates

11 poorly. He maligns them.

12      **July 18, 2025 – Second Meeting with Undersheriff Walsh**

13      43.    On July 18, 2025, to reconsider early retirement, Captain Reyes and Sergeant

14 Zambrano met with Undersheriff Walsh and Captain Reyes' Deputy Chief.  Undersheriff Walsh

15 opened the meeting by clapping and offering "congratulations on your retirement," despite

16 knowing that no final decision had been made and that retirement was neither voluntary nor

17 desired. Captain Reyes and Sergeant Zambrano explained that Undersheriff Walsh's conduct

18 during the meeting with Grammas was a significant factor in their contemplation of early

19 retirement.  In response, Undersheriff Walsh stated, "That's only 50% of what I got."  Undersheriff

20 Walsh added that if that was their reason for leaving, then they had made the right decision and

21 that they should "get the fuck out."

22      **August 15, 2025 – SCAC Swing Shift Briefing**

23      44.    On August 15, 2025, while Captain Reyes and Sergeant Zambrano were on FMLA,

24 Defendant GRAMMAS and other board members of the LVPPA, Defendants YANT, ABEL, and

25 NICHOLAS, attended a swing shift briefing at the SCAC.  During that briefing, they stated that

26 Captain Reyes was gone, that all captains were now on notice of the LVPPA's expectations, and

27 that there would be no issues, unlike with Captain Reyes.  Defendant GRAMMAS also told the

28 briefing room of officers that the incoming captain had already spoken with the LVPPA and that

1   he knew our expectations of him.

2       45.    From July 23, 2025, to October 23, 2025, Captain Reyes and Sergeant Zambrano

3   were on FMLA to deal with their emotional distress and, as a result, physical manifestations due

4   to the events above.  From October 23, 2025, until February 23, 2026, they remained off work

5   under ADA using their personal leave.  They are still employed by LVMPD.

6                              **CAUSES OF ACTION**

7                            **FIRST CAUSE OF ACTION**

8                  **42 U.S.C. § 1983 - First Amendment Prior Restraint**

9                        **Plaintiffs Against Defendant Walsh**

10      46.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though

11  set forth fully herein.

12      47.    Plaintiffs are private citizens that sought to speak on a matter of public concern.

13      48.    Pursuant to the First Amendment of the United States Constitution, Plaintiffs have

14  a constitutional right to free speech.

15      49.    Prior restraint prohibiting officers from speaking can violate the First Amendment.

16      50.    Undersheriff Walsh directly oversees LVMPD's Office of Public Information

17  ("PIO"), which serves as the department liaison for media outlets and the general public.

18      51.    Upon information and belief, Undersheriff Walsh directed PIO to contact Captain

19  Reyes and instruct him not to publicly comment regarding the mobile billboard.

20      52.    Upon information and belief, Undersheriff Walsh directed PIO to contact Sergeant

21  Zambrano and instruct her not to publicly comment regarding the mobile billboard.

22      53.    The restriction was not narrowly tailored to a compelling government interest.

23      54.    Undersheriff Walsh's directives constitute an unconstitutional prior restraint of

24  Plaintiffs' rights pursuant to the First Amendment of the United States.

25      55.    Undersheriff Walsh caused Plaintiffs' injuries as set forth herein.

26      56.    Plaintiffs are thus entitled to compensatory and consequential damages against

27  Undersheriff Walsh.

28      57.    Plaintiffs are further entitled to exemplary or punitive damages against

ClarkHill\103565\1010715\286490437.v1-2/13/26

1  Undersheriff Walsh as he is guilty of oppression and/or malice.

2       58.    Plaintiffs are also entitled to their costs.

3       59.    Pursuant to 42 U.S.C. §1988, a prevailing civil rights plaintiff may recover

4  reasonable attorney's fees.

5  <center>**SECOND CAUSE OF ACTION**</center>

6  <center>**42 U.S.C. § 1983 Municipal Monell Liability - Municipal Policy**</center>

7  <center>**Plaintiffs against Defendant LVMPD**</center>

8       60.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though

9  set forth fully herein.

10       61.    LVMPD promogulated a policy that foreclosed protected speech.

11       62.    Defendant Walsh and/or another employee of LVMPD acted pursuant to official

12  LVMPD policy when he instructed PIO to foreclose the Plaintiffs from making public statements

13  in response to the mobile billboard.

14       63.    The official policy reflects deliberate indifference to the First Amendment rights of

15  Plaintiffs because it fails to distinguish between protected and unprotected speech.

16       64.    In the alternative, Defendant Walsh was delegated final decision-making authority

17  in response to the mobile billboard.  A municipality can be liable for an isolated constitutional

18  violation when the person causing the violation has final policymaking authority.  *Collins v. City*

19  *of San Diego*, 841 F.2d 337, 341 (9th Cir. 1988).

20       65.    LVMPD is liable under the First Amendment of the United States Constitution.

21       66.    As a direct and proximate result of LVMPD's unlawful activity, Plaintiffs have

22  suffered and continue to suffer damages.

23  <center>**THIRD CAUSE OF ACTION**</center>

24  <center>**42 U.S.C. § 1983 Municipal Monell Liability - Municipal Custom**</center>

25  <center>**Plaintiffs against Defendant LVMPD**</center>

26       67.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though

27  set forth fully herein.

28       68.    LVMPD had well settled practice of foreclosing protected speech.

69.     Defendant Walsh and/or another employee of LVMPD acted pursuant to LVMPD custom when he instructed PIO to foreclose the Plaintiffs from making public statements in response to the mobile billboard.

70.     The custom reflects deliberate indifference to the First Amendment rights of the Plaintiffs because it fails to distinguish between protected and unprotected speech.

71.     LVMPD is liable under the First Amendment of the United States Constitution.

72.     As a direct and proximate result of LVMPD's unlawful activity, Plaintiffs have suffered and continue to suffer damages.

<div align="center">

**FOURTH CAUSE OF ACTION**

**42 U.S.C. § 1983 Municipal Monell Liability - Failure to Train**

**Plaintiffs against Defendant LVMPD**

</div>

73.     Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

74.     A police department can be liable under Section 1983 for inadequate training of its employees that amount to a deliberate indifference of constitutional rights.

75.     Public employees do not surrender all their First Amendment rights by reason of their employment.  The First Amendment protects a public employee's right to speak as a citizen addressing matters of public concern.

76.     The Plaintiffs were foreclosed by LVMPD from making any public statements in response to the mobile billboard in their personal capacity.

77.     LVMPD has a duty to train its officer in the clearly established law.

78.     LVMPD failed to provide adequate training to its officers on clearly established First Amendment rights, including basic distinctions between protected and unprotected speech.

79.     Has the LVMPD provided adequate training the Plaintiffs' First Amendment rights would not have been violated.

80.     LVMPD is liable under the First Amendment of the United States Constitution.

81.     As a direct and proximate result of LVMPD's unlawful activity, Plaintiffs have suffered and continue to suffer damages.

ClarkHill\103565\1010715\286490437.v1-2/13/26

**FIFTH CAUSE OF ACTION**

**Violation of Free Speech – Nevada Constitution**

**Plaintiffs against Defendant Walsh**

82.     Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

83.     Pursuant to the Nevada Constitution, Article I, Section 9, Plaintiffs have a constitutional right to free speech.

84.     Undersheriff Walsh directly oversees LVMPD's Office of Public Information ("PIO"), which serves as the department liaison for media outlets and the general public.

85.     Upon information and belief, Undersheriff Walsh directed PIO to contact Captain Reyes and instruct him not to publicly comment regarding the Mobile Billboard.

86.     Upon information and belief, Undersheriff Walsh directed PIO to contact Sergeant Zambrano and instruct her not to publicly comment regarding the Mobile Billboard.

87.     Undersheriff Walsh's directives constitute an unconstitutional prior restraint of Plaintiffs' rights pursuant to Section 9 of Article 1 of the Constitution of the State of Nevada.

88.     Undersheriff Walsh caused Plaintiffs' injuries as set forth herein.

89.     Plaintiffs are thus entitled to compensatory and consequential damages against Undersheriff Walsh.

90.     Plaintiffs are further entitled to exemplary or punitive damages against Undersheriff Walsh in an amount up to three times their compensatory damages pursuant to NRS 42.005.

**SIXTH CAUSE OF ACTION**

**Defamation**

**Plaintiff Reyes against LVPPA and Executive Board Defendants**

91.     Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

92.     On July 16, 2025, LVPPA and Executive Board Defendants made false and derogatory statements concerning Captain Reyes on the mobile billboard.

93.    An unprivileged publication of these statements was made to countless third persons who saw the mobile billboard, which was on full display for the public at large to see.

94.    LVPPA and Executive Board Defendants acted with actual malice in making the statements, as the statements were published with knowledge that the statements were false and/or with reckless disregard for the statements' veracity.

95.    On or around July 16, 2025, Defendant Grammas made false and derogatory statements to various media outlets about Captain Reyes.

96.    An unprivileged publication of these statements was made to countless third persons who read and listened to Defendant Grammas comments.

97.    Captain Reyes sustained actual or presumed damages as a result of the statements.

98.    Captain Reyes is thus entitled to compensatory and consequential damages against LVPPA and Executive Board Defendants.

99.     Captain Reyes is further entitled to exemplary or punitive damages against LVPPA and Executive Board Defendants in an amount up to three times his compensatory damages pursuant to NRS 42.005.

## SEVENTH CAUSE OF ACTION

## Defamation Per Se

## Plaintiff Reyes v. LVPPA and Executive Board Defendants)

100.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

101.    LVPPA and Executive Board Defendants made false statements on the mobile billboard which would tend to injure Captain Reyes in his trade, business, profession, and/or office as a police captain with LVMPD.

102.    On or around July 16, 2025, Defendant Grammas made false statements to various media outlets which would tend to injure Captain Reyes in his trade, business, profession, and/or office as a police captain with LVMPD.

103.    Thus, no proof of any actual harm to reputation or any other damage is required for the recovery of damages.

ClarkHill\103565\1010715\286490437.v1-2/13/26

104.    Rather, proof of the defamation itself is considered to establish the existence of some damages.

105.    Captain Reyes is thus entitled to compensatory and consequential damages against LVPPA and Executive Board Defendants.

106.    Captain Reyes is further entitled to exemplary or punitive damages against LVPPA and Executive Board Defendants in an amount up to three times his compensatory damages pursuant to NRS 42.005.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiffs against LVPPA and Executive Board Defendants

107.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

108.    LVPPA and Executive Board Defendants' conduct in arranging for the mobile billboard's public display – including at Captain Reyes' place of employment at South Central Area Command and on Las Vegas Boulevard, one of the most famous streets in the world – was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to Plaintiffs.

109.    During his public campaign against Captain Reyes in the media, Grammas acknowledged that the Mobile Billboard was "something fairly outlandish."

110.    Plaintiffs suffered severe or extreme emotional distress as the actual or proximate result of LVPPA and Executive Board Defendants' conduct.

111.    Plaintiffs are thus entitled to compensatory and consequential damages against LVPPA and Executive Board Defendants.

112.    Plaintiffs are further entitled to exemplary or punitive damages against LVPPA and Executive Board Defendants in an amount up to three times their compensatory damages pursuant to NRS 42.005.

/ / /

/ / /

1

**NINTH CAUSE OF ACTION**

2

**Invasion of Privacy: False Light**

3

**(Plaintiff Reyes against LVPPA and Executive Board Defendants)**

4
5

113.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

6
7

114.    LVPPA and Executive Board Defendants gave publicity to a matter concerning Captain Reyes that placed Captain Reyes before the public in a false light via the mobile billboard.

8
9

115.    The false light under which Captain Reyes was placed would be highly offensive to a reasonable person.

10
11
12

116.    LVPPA and Executive Board Defendants had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Captain Reyes was placed via the mobile billboard.

13
14

117.    Plaintiff is thus entitled to compensatory and consequential damages against LVPPA and Executive Board Defendants.

15
16
17

118.    Plaintiff is further entitled to exemplary or punitive damages against LVPPA and Executive Board Defendants in an amount up to three times their compensatory damages pursuant to NRS 42.005.

18

**TENTH CAUSE OF ACTION**

19

**Concert of Action**

20

**Plaintiffs against LVPPA and Executive Board Defendants**

21
22

119.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

23
24
25

120.    LVPPA and Executive Board Defendants acted together to commit defamation, defamation per se, intentional infliction of emotional distress, and/or intentional interference with prospective economic advantage while acting in concert or pursuant to a common design.

26
27

121.    Plaintiffs are thus entitled to compensatory and consequential damages against LVPPA and Executive Board Defendants.

28

122.    Plaintiffs are further entitled to exemplary or punitive damages against LVPPA

ClarkHill\103565\1010715\286490437.v1-2/13/26

1    and Executive Board Defendants in an amount up to three times their compensatory damages

2    pursuant to NRS 42.005.

3                                        **ELEVENTH CAUSE OF ACTION**

4                                              **Negligence Per Se**

5                              **Plaintiffs against Undersheriff Walsh and LVMPD**

6            123.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though

7    set forth fully herein.

8            124.    Undersheriff Walsh violated NRS 33.240, which governs acts that constitute

9    harassment in the workplace and reads in pertinent part as follows:

10           Harassment in the workplace occurs when:

11           1.   A person knowingly threatens to cause or commits an act that
             causes:

12           …

13           (c) Substantial harm to the physical or mental health or safety of a
             person;

14           2.   The threat is made or the act is committed against an employer,
15           an employee of the employer while the employee performs the
             employee's duties of employment or a person present at the
             workplace of the employer; and

16           3.   The threat would cause a reasonable person to fear that the
17           threat will be carried out or the act would cause a reasonable person
             to feel terrorized, frightened, intimidated or harassed.

18

19           125.    More specifically, Undersheriff Walsh violated NRS 33.240 given his actions at the

20   July 17 Meeting and the July 18 Meeting; in revoking Captain Reyes and Sergeant Zambrano's

21   access to LVMPD headquarters on or about July 17, 2025; and in directing PIO not to respond to

22   media inquiries regarding Captain Reyes and the mobile billboard, which resulted in false and

23   damaging narratives persisting unchallenged.

24           126.    The violations were the legal cause of Plaintiffs' injuries.

25           127.    Plaintiffs belong to the class of persons that the statute was intended to protect.

26           128.    Plaintiffs' injuries are the type against which the statute was intended to protect.

27           129.    Plaintiffs suffered damages.

28           130.    Undersheriff Walsh, who caused Plaintiffs' injuries as set forth herein, was under

1   LVMPD's control.

2       131.    Undersheriff Walsh's actions, as set forth herein, occurred within the scope of his

3   employment with LVMPD.

4       132.    LVMPD is thus liable to Plaintiffs under respondeat superior.

5       133.    Plaintiffs are thus entitled to compensatory and consequential damages against

6   Undersheriff Walsh and LVMPD.

7       134.    Plaintiffs are further entitled to exemplary or punitive damages against

8   Undersheriff Walsh in an amount up to three times their compensatory damages pursuant to NRS

9   42.005.

10                          **TWELFTH CAUSE OF ACTION**

11                      **Intentional Infliction of Emotional Distress**

12                  **Plaintiffs against Undersheriff Walsh and LVMPD**

13      135.    Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though

14  set forth fully herein.

15      136.    Undersheriff Walsh's conduct at the July 17 Meeting and the July 18 Meeting, and

16  LVMPD's denial of  Plaintiffs' request for administrative leave, was extreme or outrageous with

17  either the intention of, or reckless disregard for, causing emotional distress to Plaintiffs.

18      137.    Plaintiffs suffered severe or extreme emotional distress as the actual or proximate

19  result of Undersheriff Walsh's conduct.

20      138.    Undersheriff Walsh, who caused Plaintiffs' injuries as set forth herein, was under

21  LVMPD's control.

22      139.    Undersheriff Walsh's actions, as set forth herein, occurred within the scope of his

23  employment with LVMPD.

24      140.    LVMPD is thus liable to Plaintiffs under respondeat superior.

25      141.    Plaintiffs are thus entitled to compensatory and consequential damages against

26  Undersheriff Walsh and LVMPD.

27      142.    Plaintiffs are further entitled to exemplary or punitive damages against

28  Undersheriff Walsh in an amount up to three times their compensatory damages pursuant to NRS

ClarkHill\103565\1010715\286490437.v1-2/13/26

42.005.

## THIRTEENTH CAUSE OF ACTION

### Civil Conspiracy

### Plaintiffs against Executive Board Defendants and Undersheriff Walsh

143. Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

144. Executive Board Defendants and Undersheriff Walsh, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming Plaintiffs.

145. Plaintiffs sustained damage resulting from Executive Board Defendants and Undersheriff Walsh's act or acts.

146. Plaintiffs are thus entitled to compensatory and consequential damages against Executive Board Defendants and Undersheriff Walsh in excess of $15,000.

147. Plaintiffs are further entitled to exemplary or punitive damages against Executive Board Defendants and Undersheriff Walsh in an amount up to three times their compensatory damages pursuant to NRS 42.005.

## FOURTEENTH CAUSE OF ACTION

### Negligent Hiring

### Plaintiffs against LVMPD

148. Plaintiffs repeat and re-allege the allegations of all preceding paragraphs as though set forth fully herein.

149. LVMPD owed a duty of care to Plaintiffs as their employer.

150. LVMPD breached that duty by hiring Walsh even though they knew, or should have known, of his bullying, intimidating, and harassing propensities.

151. The breach was the legal cause of Plaintiffs' injuries.

152. Plaintiffs suffered damages.

153. Plaintiffs are thus entitled to compensatory and consequential damages against LVMPD.

/ / /

ClarkHill\103565\1010715\286490437.v1-2/13/26

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs pray for relief as follows:

3

1.    For compensatory and consequential damages against Defendants;

4

2.    For exemplary and punitive damages against Defendants;

5

3.    For an award of reasonable attorney's fees and costs incurred herein;

6

4.    For pre-judgment and post-judgment interest on the foregoing amounts; and

7

5.    For such other and further relief as this Court may deem just and proper.

8

DATED this 13ᵗʰ day of February 2026.

9

CLARK HILL PLC

10

11

By /s/ Paola M. Armeni
PAOLA M. ARMENI, ESQ.

12

Nevada Bar No. 8357
WILLIAM D. SCHULLER, ESQ.

13

Nevada Bar No. 11271
1700 S. Pavilion Center Drive, Suite 500

14

Las Vegas, Nevada 89135

15

Attorneys for Plaintiffs,
LANDON REYES and

16

ALEJANDRA ZAMBRANO

17

18

19

20

21

22

23

24

25

26

27

28

ClarkHill\103565\1010715\286490437.v1-2/13/26