ANTHONY P. SGRO
Nevada Bar No. 3811
ALANNA C. BONDY
Nevada Bar No. 14830
SGRO & ROGER
2901 El Camino Ave., Suite 204
Las Vegas, Nevada 89102
Telephone:  702.384.9800
tsgro@sgroandroger.com
abondy@sgroandroger.com

DAVID ROGER, ESQ.
Nevada Bar No. 2781
LAS VEGAS POLICE PROTECTIVE ASSOCIATION
9330 West Lake Mead Boulevard, Suite 200
Las Vegas, Nevada 89134
Telephone: 702.384.8692
Facsimile: 702.384.7989
droger@lvppa.com
*Attorneys for LVPPA and the Executive Board Defendants*

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEVADA

| | |
|---|---|
| LANDON REYES, an individual; and ALEJANDRA ZAMBRANO, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT, a political subdivision of Clark County Nevada; UNDERSHERIFF ANDREW WALSH, an individual; LAS VEGAS POLICE PROTECTIVE ASSOCIATION; STEVEN GRAMMAS, an individual; SCOTT NICHOLAS, an individual; BRYAN YANT, an individual; DANIEL COYNE, an individual; JOHN ABEL, an individual; GREGORY STINNETT, an individual; and DOES I through X, inclusive, <br><br> Defendants. | Case No.: 2:26-cv-00395-APG-NJK <br><br><br> **SPECIAL MOTION TO DISMISS COMPLAINT PURSUANT TO NRS 41.635 et seq. (ANTI-SLAPP) AND FRCP 12(b)(6)** |

Defendants Las Vegas Police Protective Association ("LVPPA") and Steven Grammas, Scott Nicholas, Bryan Yant, Daniel Coyne, John Abel, and Gregory Stinnett (the "Executive Board Defendants") by and through their undersigned counsel move to dismiss Plaintiffs' Complaint, with prejudice, pursuant to Nevada's anti-SLAPP statutes, NRS 41.635 et seq. and, in the alternative, pursuant to FRCP 12(b)(6).

This Motion is made and based on the memorandum of points and authorities attached hereto, the papers and pleadings on file herein, and any oral argument that may be adduced at the time set for hearing of this matter, if any.

DATED this 27th day of March, 2026

**SGRO & ROGER**

/s/ Alanna Bondy
ANTHONY P. SGRO
ALANNA C. BONDY
2901 El Camino Ave., Suite 204
Las Vegas, Nevada 89102

DAVID ROGER, ESQ.
LAS VEGAS POLICE PROTECTIVE
ASSOCIATION
9330 West Lake Mead Boulevard, Suite 200
Las Vegas, Nevada 89134
*Attorneys for LVPPA and the Executive Board Defendants*

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.    Introduction

This case presents a textbook example of a meritless lawsuit targeting protected speech. Plaintiffs seek to impose tort liability on a labor organization and its executive board members for expressing opinions about workplace leadership and employee morale—communications made in furtherance of their role as advocates on behalf of union members. Such speech lies at the core of Nevada's anti-SLAPP statutes and the First Amendment. But stripped of conclusory labels, the Complaint alleges nothing more than non-actionable opinion and rhetorical hyperbole. It fails to identify any false statement of fact, any conduct that rises to the level of extreme or outrageous conduct, or any viable tort.

Accordingly, Plaintiffs cannot meet their burden under NRS 41.660 to demonstrate a probability of prevailing on the merits. Nor can they state a claim upon which relief can be granted. For these independent reasons, the claims against LVPPA and the Executive Board Defendants must be dismissed in their entirety.

### II.    Statement of Facts

Plaintiffs Landon Reyes and Alejandra Zambrano filed a Complaint on February 13, 2026, asserting claims against the Las Vegas Police Protective Association ("LVPPA") and certain members of its Executive Board for: (1) Defamation, (2) Defamation Per Se, (3) Intentional Infliction of Emotional Distress, (4) Invasion of Privacy – False Light, (5) Concert of Action, and (6) Civil Conspiracy. Plaintiffs also assert separate claims against the Las Vegas Metropolitan Police Department ("LVMPD") and Undersheriff Andrew Walsh arising under 42 U.S.C. § 1983, the Nevada Constitution, and Nevada law.

The claims against LVPPA and the Executive Board Defendants arise exclusively under Nevada common law, and Plaintiffs invoke this Court's supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. Comp. ¶ 2.

Plaintiffs' allegations against LVPPA and the Executive Board Defendants can be summarized as follows:

1. In or around May or June 2025, LVPPA raised concerns with LVMPD leadership regarding Captain Reyes' operational decisions, including issues relating to uniforms and workspace assignments. Comp. ¶ 23.

2. LVMPD leadership advised Captain Reyes that such matters fell within management discretion and were not collective bargaining issues, and that LVPPA could pursue formal remedies if it disagreed. Comp. ¶ 24.

3. Following a July 3, 2025 dayshift briefing, LVPPA President Steven Grammas asserted that Captain Reyes had made disparaging remarks about LVPPA. Comp. ¶ 25.

4. On July 15, 2025, Captain Reyes was advised by an LVMPD lieutenant that LVPPA intended to display signage outside the South Central Area Command criticizing Reyes. Comp. ¶ 27.

5. On or about July 16, 2025, a mobile billboard was displayed that featured Captain Reyes' photograph alongside statements critical of his leadership, including phrases such as "Morale Killer," "Do Not Support LVMPD's Captain Landon Reyes," and "Morale plummets under his leadership," and included LVPPA insignia. Comp. ¶ 29.

6. The billboard was initially positioned outside the South Central Area Command and later moved to LVMPD Headquarters where it was visible to LVMPD personnel and the public. Comp. ¶¶ 29, 34.

7. Certain Executive Board Defendants—Abel, Stinnett, Yant, and Coyne—were present near the mobile billboard while it was displayed at the South Central Area Command. Comp. ¶ 30.

8. On July 17, 2025, Defendant Grammas met with LVMPD leadership and Captain Reyes and stated that the billboard "was not personal" but "just business," and that additional actions could follow if necessary. Comp. ¶ 37. At this meeting, Grammas indicated that the mobile billboard was a reaction to "Reyes' alleged comments about the LVPPA." *Id*.

9. Thereafter, Defendant Grammas also made statements to the media criticizing Captain Reyes' leadership stating "(1) "We had multiple complaints from our officers, our detectives, and honestly supervisors who work directly under him about his decisions and the direction that he's having the officers go." (2) "One lieutenant had made mention that he had a conversation with the captain and the captain went into a briefing room and derogatorily spoke about that lieutenant to the troops." (3)"We also had some information from folks in the briefing rooms

that the (sic?) was going in and talking about the PPA specifically, making references to the lawsuit that our officers won for overtime pay, which was $19 million, and alluding to where's the money." (4) Cops have been wronged by Landon Reyes and (5) Reyes treats his subordinates poorly. He maligns them." Comp. ¶ 42.

10. On August 15, 2025, certain Executive Board Defendants, including Yant, Abel, and Nicholas, attended a briefing and made statements indicating that Captain Reyes was gone and that LVPPA's expectations had been communicated to LVMPD leadership. Comp. ¶ 44.

11. Plaintiffs characterize these events as a coordinated effort to harm Captain Reyes' reputation, inflict emotional distress, and interfere with his prospective economic advantage. Comp. ¶ 120.

Plaintiffs' allegations against LVPPA and the Executive Board Defendants, even if taken as true, are not actionable as a matter of law. The conduct at issue consists of speech and expressive activity by a labor organization and its executive board members concerning matters of workplace conditions, employee morale, and union-related disputes, subjects that fall squarely within the protections of Nevada's anti-SLAPP statutes, NRS 41.635 et seq. The statements identified in the Complaint constitute non-actionable protected speech on matters of public concern. Accordingly, the Complaint is subject to dismissal under Nevada's anti-SLAPP framework.

Independently, the Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), as Plaintiffs have not alleged facts sufficient to support any cognizable legal theory against LVPPA or the Executive Board Defendants. The statements at issue constitute non-actionable opinion and/or rhetorical hyperbole, and the allegations do not rise to the level of extreme or outrageous conduct required to sustain a claim for intentional infliction of emotional distress. Thus, for the reasons set forth herein, Plaintiffs' claims against LVPPA and the Executive Board Defendants fail as a matter of law and should be dismissed in their entirety.

### III.  Dismissal under Nevada's Anti-SLAPP Statutes

Nevada law condemns "meritless lawsuit[s] that a party initiates to chill a defendant's exercise of his or her First Amendment free speech rights." *Stubbs v. Strickland*, 129 Nev. 146, 150, 297 P.3d 326, 329 (2013); NRS 41.660. Known as "Strategic Lawsuits Against Public Participation," these claims serve only to harass the defending party and waste judicial resources. See, e.g., *John v.*

*Douglas Cnty. Sch. Dist.*, 125 Nev. 746, 758, 219 P.3d 1276, 1284 (2009), superseded by statute on other grounds as stated in *Shapiro v. Welt*, 133 Nev. 35, 37, 389 P.3d 262, 266 (2017). For these reasons, the Nevada legislature provided an efficient escape from litigation for parties, like LVPPA and the Executive Board Defendants, who find themselves embroiled in litigation due to their good-faith communications. See *Stark v. Lackey*, 136 Nev. 38, 40, 458 P.3d 342, 345 (2020) (recognizing that NRS 41.660 intends to allow dismissal of "the meritless lawsuit before incurring significant costs of litigation'). A dismissal under NRS 41.660 "operates as an adjudication upon the merits." *Walker v. Intelli-heart Servs., Inc.*, No. 318CV00132MMDCBC, 2020 WL 1044010, at *6 (D. Nev. Mar. 4, 2020), aff'd sub nom. *Walker ex rel. United States v. Intelli-Heart Servs., Inc.*, No. 20-15688, 2021 WL 4316835 (9th Cir. Sept. 23, 2021) (citing NRS 41.660(5)).

Although Plaintiffs assert federal claims against other defendants, the claims against LVPPA and the Executive Board Defendants arise exclusively under Nevada law and are before this Court pursuant to supplemental jurisdiction under 28 U.S.C. § 1367. Under the *Erie* doctrine, federal courts adjudicating state law claims, whether under diversity or supplemental jurisdiction, apply substantive state law. See *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1129-30 (N.D. Cal. 1999) (citing *Nathan v. Boeing Co.*, 116 F.3d 422, 423 (9th Cir. 1997)). Consistent with this principle, the United States District Court for the District of Nevada routinely applies Nevada's anti-SLAPP framework to state law claims pending before it. See e.g. *Moreira-Brown v. Las Vegas Rev. J., Inc.*, 648 F. Supp. 3d 1278, 1283 (D. Nev. 2023), aff'd, No. 23-15143, 2024 WL 1596456 (9th Cir. Apr. 12, 2024); *Century Sur. Co. v. Prince*, 265 F. Supp. 3d 1182, 1188 (D. Nev. 2017), aff'd, 782 F. App'x 553 (9th Cir. 2019).

Nevada's anti-SLAPP statutes require a two-step process. First, the Defendants must establish by a preponderance of the evidence that the claim is based on a good faith communication in furtherance of the right to petition or the right to free speech in direct connection with an issue of public concern. NRS 41.660(3)(a). Second, if the Defendants meet this burden, the Plaintiffs must "demonstrate with prima facie evidence a probability of prevailing on the claim" NRS 41.660(3)(b).

In making this determination, the Court may "consider such evidence, written or oral, by witnesses or affidavits," as it determines to be material. NRS 41.660(3)(d). Importantly, Nevada's anti-SLAPP statutes can apply to any cause of action, "because the focus is on the defendant's activity,

not the form of the plaintiff's claims for relief." *Panik v. TMM, Inc.*, 139 Nev. 526, 529, 538 P.3d 1149, 1152-53 (2023).

Here, each of Plaintiffs' claims against LVPPA and the Executive Board Defendants arises from and is predicated on a series of communications, including the mobile billboard and statements to the media specifically attributed to Defendant Grammas. Accordingly, regardless of how Plaintiffs style their claims, they are all subject to anti-SLAPP analysis. See id. at 1153 (recognizing that Nevada's anti-SLAPP statutes apply broadly to claims including defamation, defamation per se, conspiracy, injunctive relief, intentional and negligent infliction of emotional distress, false light, business disparagement, civil conspiracy, and concert of action).

This Court has adopted the framework set forth by the Ninth Circuit in *Planned Parenthood Fed'n of Am., Inc. v. Center for Medical Progress*, which provides that anti-SLAPP motions are to be analyzed based on the nature of the challenge presented. 890 F.3d 828, 834 (9th Cir.), amended, 897 F.3d 1224 (9th Cir. 2018). Specifically, such motions "should be considered as motions to dismiss [pursuant to FRCP 12(b)(6)] if they are legal attacks and motions for summary judgment [pursuant to FRCP 56] if they are factual attacks." *Sternberg v. Warneck*, No. 2:23-CV-01466-APG-EJY, 2025 WL 1489701, at *2 (D. Nev. May 22, 2025).

Accordingly, if the Court considers evidence outside the pleadings in resolving an anti-SLAPP motion, "the motion must be treated as one for summary judgment under Rule 56", and all parties must be afforded a reasonable opportunity to present material pertinent to the motion. *Id.*

With this framework in mind, step one of the analysis under NRS 41.660 is comprised of two components. "First, the movant must show that the comments at issue fall into one of the four categories of protected communications enumerated in NRS 41.637. Second, the movant must show that the communication is truthful or is made without knowledge of its falsehood." *Id.*

The four categories of protected communications listed in NRS 41.637 include:
> "1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;
> 2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity;
> 3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law; or

4. Communication made in direct connection with an issue of public interest in a place open to the public or in a public forum."

Here, the conduct alleged in the Complaint falls squarely within NRS 41.637(2), which protects "[c]ommunication of information or a complaint to … an officer or employee of … a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity."

NRS 41.640 dictates that "political subdivision" as used in Nevada's anti-SLAPP statutes, has the meaning ascribed to it in NRS 41.0305. This Court has recently affirmed that LVMPD is a "political subdivision" for purposes of NRS Chapter 41. See *Villanueva v. Las Vegas Metro. Police Dep't*, No. 2:24-CV-00125-ART-DJA, 2024 WL 6915450, at *6, n. 1 (D. Nev. Dec. 30, 2024) ("The LVMPD is a political subdivision of the state . . ."), see also NRS 280.280(4).

Having established that LVMPD is a political subdivision for purposes of NRS 41.637(2), the remaining question is whether the challenged conduct constitutes a protected "communication of information or a complaint" to its officers or employees regarding a matter reasonably of concern to the department. It plainly does.

As alleged in the Complaint, LVPPA and its Executive Board communicated concerns regarding Captain Reyes' leadership, decision-making, and the resulting impact on officer morale, both directly to LVMPD leadership and more broadly to LVMPD personnel.

While the Complaint notes that these communications took various forms, the substance, and the audience, remain the same. Most notably, Plaintiffs allege that LVPPA displayed a mobile billboard featuring Captain Reyes' photograph alongside statements such as "Morale Killer," "Do Not Support LVMPD's Captain Landon Reyes," and "Morale plummets under his leadership." The billboard was intentionally placed directly outside the South Central Area Command employee entrance and later relocated near LVMPD Headquarters, ensuring it was seen by LVMPD employees.

As set forth in the Declaration of Steven Grammas, attached hereto as Exhibit "A", these communications, including those reflected on the billboard, were based on complaints raised by LVPPA members regarding Captain Reyes' workplace conduct and its impact on morale and were made in furtherance of LVPPA's role in conveying those concerns to LVMPD personnel and leadership.

In other words, the conduct alleged in the Complaint involves communications directed to officers and employees of a political subdivision concerning internal workplace conditions, supervisory conduct, and their impact on officer morale. These are matters plainly of concern to the department because they relate directly to its management and operation.

Accordingly, the challenged statements and conduct fall within the plain language of NRS 41.637(2). The statute is not limited to formal grievances or internal channels, nor does it impose any restriction on the manner in which those complaints are communicated. Where, as here, the alleged conduct involves conveying concerns about leadership and workplace conditions to officers and employees of the department itself, the communications are protected as a matter of law.

Further, to the extent the Complaint alleges that the mobile billboard was displayed to the public generally, and that Defendant Grammas made statements to the media concerning Captain Reyes, those communications are protected under NRS 41.637(4) because they constitute "communication made in direct connection with an issue of public interest in a place open to the public or in a public forum."

The Nevada Supreme Court has adopted the following guidelines for courts to use in determining whether an issue is one public interest under NRS 41.637(4): "(1) 'public interest' does not equate with mere curiosity; (2) a matter of public interest should be something of concern to a substantial number of people; a matter of concern to a speaker and a relatively small specific audience is not a matter of public interest; (3) there should be some degree of closeness between the challenged statements and the asserted public interest—the assertion of a broad and amorphous public interest is not sufficient; (4) the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy; and (5) a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." *Smith v. Zilverberg*, 137 Nev. 65, 68, 481 P.3d 1222, 1227 (2021).

In *Smith v. Zilverberg*, the Nevada Supreme Court held that statements made in a publicly accessible YouTube video and online post criticizing a well-known "thrifter" constituted speech on a matter of public interest under NRS 41.637(4). *Id*. The plaintiff hosted and appeared in online and television programs about thrifting and operated a large Facebook group. *Id*. at 1226. The defendants were former associates of the plaintiff who posted a video and related online statements accusing him

of bullying, retaliating against members of the thrifting community, and causing harm to members of the thrifting community, including suggesting that his conduct led others to contemplate self-harm. *Id*. The Court concluded that the statements were not merely part of a private dispute, but instead concerned the plaintiff's conduct as a prominent figure within a large and widespread community. *Id*. at 1127-28. Because that conduct informed how others in the community might choose to interact or do business with him, the Court held the statements were made in direct connection with an issue of public interest. *Id*.

Similarly, in *Wynn v. Associated Press*, the Nevada Supreme Court held that a news article reporting decades-old allegations of sexual misconduct against Steve Wynn, a prominent figure in Nevada's gaming industry and politics, constituted speech on a matter of public interest under NRS 41.637(4). 140 Nev. Adv. Op. 56, 555 P.3d 272, 277 (2024), cert. denied, 145 S. Ct. 1434, 221 L. Ed. 2d 556 (2025). The article described allegations contained in police complaints and was published in the context of widespread national reporting, regulatory investigations, and Wynn's resignation from major business and political roles. *Id*. at 275-76, 277. The Court emphasized that the alleged conduct affected Wynn's public business and political affairs and was therefore of concern to a substantial number of people, including consumers, voters, and investigators. *Id*. at 277. The Court specifically held that "[t]he public had an interest in understanding the history of misconduct alleged to have been committed by one of the most recognized figures in Nevada, and the article directly relates to that interest." *Id*.

Here, the communications at issue concern the conduct and leadership of an individual operating within a broader, publicly accountable system. The challenged communications address Captain Reyes' leadership, decision-making, and the resulting impact on officer morale within LVMPD. Those issues bear directly on the functioning, effectiveness, and internal operations of a major metropolitan police department.

Consistent with the reasoning in *Smith* and *Wynn*, this is not a private dispute between isolated individuals. Rather, the statements concern how a supervisor within a public law enforcement agency performs his role and how that performance affects the officers under his command. That subject is inherently of concern not only to LVMPD personnel, but also to the broader community served by the department.

Accordingly, the challenged statements fall squarely within at least two of the four categories of protected speech under NRS 41.637.

Further, the challenged communications were made in good faith because they were either truthful or, at a minimum, made without knowledge of any alleged falsity. As an initial matter, most, if not all, of the communications at issue in this action are statements of opinion by Defendant Grammas and/or the LVPPA. It is well settled that "opinion statements are incapable of being false, as there is no such thing as a false idea." *Williams v. Lazer*, 137 Nev. 437, 440, 495 P.3d 93, 97 (2021) (quoting *Abrams v. Sanson*, 136 Nev. 83, 89, 458 P.3d 1062, 1068 (2020); *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 714, 57 P.3d 82, 87 (2002)) (internal quotations omitted).

With respect to the mobile billboard, the statements "Morale Killer," and "Morale plummets under his leadership," are non-actionable expressions of opinion regarding Captain Reyes' leadership and its perceived impact on officer morale. Each reflects an inherently subjective, evaluative judgment rather than an assertion of fact. Further, the statement "Do Not Support LVMPD's Captain Landon Reyes" is a call to action that conveys no alleged fact and is therefore, incapable of being proven true or false. As such, the communications contained on the mobile billboard are non-actionable as a matter of law.

The same is true of the statements attributed to Defendant Grammas in Paragraph 42 of the Complaint.[1] As set forth in the Declaration of Steven Grammas, those statements were based on complaints he personally received, as well as complaints conveyed by other LVPPA Executive Board members regarding Captain Reyes' leadership and its impact on morale. Exhibit "A". Grammas made these statements to communicate and address those concerns, advocate on behalf of union members, and seek workplace changes within LVMPD. *Id.* He further attests that the statements were based on information he believed to be true at the time and were not made with knowledge of any falsity. *Id.*

---

[1] Such statements include: "(1) "We had multiple complaints from our officers, our detectives, and honestly supervisors who work directly under him about his decisions and the direction that he's having the officers go." (2) "One lieutenant had made mention that he had a conversation with the captain and the captain went into a briefing room and derogatorily spoke about that lieutenant to the troops." (3)"We also had some information from folks in the briefing rooms that the (sic?) was going in and talking about the PPA specifically, making references to the lawsuit that our officers won for overtime pay, which was $19 million, and alluding to where's the money." Comp. ¶ 42.

Such a sworn declaration is sufficient to establish good faith under Nevada's anti-SLAPP framework.. *Stark v. Lackey*, 136 Nev. 38, 43, 458 P.3d 342, 347 (2020).

Additional statements allegedly made by Grammas as described in Paragraph 42 of the Complaint, including that "cops have been wronged by Landon Reyes" and that "Reyes treats his subordinates poorly" and "maligns them"—are inherently subjective characterizations of leadership style and workplace treatment. Such statements are paradigmatic opinion, not factual assertions capable of giving rise to a defamation claim.

Accordingly, the statements attributed to Grammas in Paragraph 42 were made in good faith and, to the extent they constitute opinion, are non-actionable as a matter of law.

Thus, LVPPA and the Executive Board Defendants have satisfied the first prong of NRS 41.660, and the burden shifts to Plaintiffs to present prima facie evidence demonstrating a probability of prevailing on their claims.

Plaintiffs cannot meet that burden. As set forth more fully below, each of Plaintiffs' claims fails as a matter of law under FRCP 12(b)(6). Because the challenged statements are non-actionable and the Complaint does not allege facts sufficient to support any cognizable claim, Plaintiffs cannot present prima facie evidence establishing a probability of success on the merits. Accordingly, dismissal is warranted under Nevada's anti-SLAPP framework.

**IV.     Dismissal under FRCP 12(b)(6)**

"Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted." *F.T.C. v. AMG Servs*., No. 2:12-CV-00536-GMN, 2012 WL 6800778, at *2 (D. Nev. Dec. 28, 2012) (citing *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.1983)). "[D]ismissal is appropriate when the complaint fails to give a defendant fair notice of a legally cognizable claim and the grounds on which it rests." *F.T.C.*, No. 2:12-CV-00536-GMN, 2012 WL 6800778, at *2 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).A properly pleaded complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). "In considering whether the complaint is sufficient to state a claim, a court first takes all material allegations as true and construe[s] them in the light most favorable to the plaintiff." *F.T.C.*, No. 2:12-CV-00536-GMN, 2012 WL 6800778, at *2. However, the Court is "not required to accept as true, allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences." *Id*. (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001)). Nor is the Court required to "accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)(quoting *Bell Atl. Corp*. 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

Here, Plaintiffs assert claims against LVPPA and the Executive Board Defendants for (1) defamation, (2) defamation per se, (3) intentional infliction of emotional distress, (4) invasion of privacy – false light, (5) concert of action, and (6) civil conspiracy. Each of these claims is premised on a series of communications, including the mobile billboard and media statements attributed to Defendant Grammas.

     i.     <u>*Defamation & Defamation Per Se*</u>

"To establish a prima facie case of defamation, a plaintiff must prove: (1) a false and defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." *Moreira-Brown v. Las Vegas Rev. J., Inc*., 648 F. Supp. 3d 1278, 1289 (D. Nev. 2023), aff'd, No. 23-15143, 2024 WL 1596456 (9th Cir. Apr. 12, 2024) (internal quotations omitted). While defamation is generally governed by a negligence standard, the Nevada Supreme Court has recognized that police officers are "public officials" for defamation purposes, requiring them to prove actual malice when allegedly defamatory statements relate to their official conduct. *Posadas v. City of Reno*, 109 Nev. 448, 454, 851 P.2d 438, 442 (1993). "Actual malice is defined as knowledge of the falsity of a statement or a reckless disregard for its truth." *Id*. (citing *Nevada Ind. Broadcasting v. Allen*, 99 Nev. 404, 414, 664 P.2d 337, 344 (1983)).

Under Nevada law, defamation per se refers to certain classes of defamatory statements that are considered so harmful they are actionable without requiring proof of actual damages. Nevada recognizes four traditional categories of defamation per se: "(1) imputations that plaintiff has committed a crime; (2) imputations that would injure plaintiff's trade, business or office; (3) imputations that the plaintiff has contracted a loathsome disease; and (4) imputations of unchastity in a woman." *Ellerbe v. Tuscan Highlands Apartments*, No. 2:24-CV-00554-APG-DJA, 2024 WL 3570990, at *6 (D. Nev. July 26, 2024) (internal quotations and citation omitted, cleaned up).

The elements of a defamation per se claim are the same as ordinary defamation, however damages are presumed for defamation per se rather than requiring proof. See *Dinkins v. Schinzel*, 362 F. Supp. 3d 916, 923 (D. Nev. 2019).

As noted above, "opinion statements are incapable of being false, as there is no such thing as a false idea." *Williams v. Lazer*, 137 Nev. 437, 440, 495 P.3d 93, 97 (2021) (quoting Abrams v. Sanson, 136 Nev. 83, 89, 458 P.3d 1062, 1068 (2020); *Pegasus v. Reno Newspapers, Inc*., 118 Nev. 706, 714, 57 P.3d 82, 87 (2002)) (internal quotations omitted). "However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false." *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1212 (D. Nev. 2011). "[I]n order to determine if a statement is one of fact or opinion, the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Id.* at 1211-12 (quoting *Pegasus v. Reno Newspapers*, Inc., 118 Nev. 706, 57 P.3d 82, 87 (2002) (internal quotations omitted). "The determination of whether a statement is capable of a defamatory construction is a question of law." *Id.* at 1211. However, "[i]f a statement is susceptible to different constructions, resolution of any ambiguity is a question of fact for the jury." *Id*. at 1212 (citing *Branda v. Sanford*, 97 Nev. 643, 637 P.2d 1223, 1225–26 (1981)).

Importantly, an opinion or evaluative statement based on disclosed "nondefamatory facts is not . . . sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is." *Standing Comm. on Discipline of U.S. Dist. Ct. for Cent. Dist. of California v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (quoting Restatement (Second) of Torts § 566, cmt. c). For example, as the Ninth Circuit explained, a statement such as "I think Jones is an alcoholic," may be defamatory inasmuch as it appears to be an expression of opinion based on undisclosed facts. *Id*. (citing Restatement (Second) of Torts § 566, cmts. b & c ). By contrast, the statement "Jones moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair ... with a drink in his hand. I think he must be an alcoholic" would generally be deemed non-actionable because the "expression of opinion appears to disclose all the facts on which it is based, and does not imply that there are other, unstated facts supporting the belief that Jones is an alcoholic." *Id.* (citing Restatement (Second) of

Torts § 566, cmt. c). "The rationale behind this rule is straightforward: When the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts." *Id*. (citations omitted.)

Moreover, "a statement is not defamatory if it is an exaggeration or generalization that could be interpreted by a reasonable person as "mere rhetorical hyperbole." *Pegasus v. Reno Newspapers, Inc.*, 118 Nev. 706, 715, 57 P.3d 82, 88 (2002) (quoting *Wellman v. Fox*, 108 Nev. 83, 88, 825 P.2d 208, 211 (1992) (internal quotations omitted)).

In *State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, the Nevada Supreme Court held that an investigator's statement to other law enforcement personnel—"if I had conducted an investigation that was crappy or half-assed, I would expect to be fired as well"—regarding a former Deputy Attorney General constituted non-actionable opinion. 118 Nev. 140, 150, 42 P.3d 233, 240 (2002).

Similarly, this Court previously found that Elon Musk's statements accusing a former employee of committing "extensive and damaging sabotage" was non-actionable because it constituted "an exaggeration or generalization that could be interpreted by a reasonable person as mere rhetorical hyperbole." *Tesla, Inc. v. Tripp*, 487 F. Supp. 3d 953, 972 (D. Nev. 2020) (internal citations and quotations omitted).

Here, Plaintiffs' defamation claims fail at the threshold because the statements at issue are not actionable as a matter of law. The statements identified in the Complaint are non-actionable expressions of opinion, subjective evaluation, and rhetorical hyperbole concerning Captain Reyes' leadership and its perceived impact on officer morale. Statements such as "morale killer," "morale plummets under his leadership," and "do not support" are inherently evaluative and incapable of being proven true or false. Likewise, statements that "cops have been wronged," that Reyes "treats his subordinates poorly," or that he "maligns them" reflect subjective characterizations and interpretations of Reyes' workplace conduct.

Critically, the statements attributed to Defendant Grammas, specifically, are expressly grounded in disclosed underlying facts—namely, complaints he received from other officers,

detectives, and supervisors regarding Captain Reyes' leadership and decision-making.[2] Where, as here, the speaker discloses the factual basis for his views, the resulting statements are understood as interpretations of those facts, rather than as implying the existence of undisclosed defamatory information. Such statements are non-actionable as a matter of law. See *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995).

This conclusion is consistent with Nevada law recognizing that statements of this nature, particularly those reflecting dissatisfaction with someone's job performance, constitute non-actionable opinion or rhetorical hyperbole. See *State v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark,* 118 Nev. 140, 150, 42 P.3d 233, 240 (2002); *Tesla, Inc. v. Tripp*, 487 F. Supp. 3d 953, 972 (D. Nev. 2020).

Accordingly, the challenged statements do not give rise to a claim for defamation as a matter of law. They neither assert nor imply the existence of facts capable of being proven true or false, and instead reflect subjective evaluations and advocacy concerning internal workplace conditions and leadership.

Plaintiffs therefore cannot satisfy the threshold requirement of identifying a false and defamatory statement. This failure is dispositive of both their defamation and defamation per se claims, regardless of any allegation of presumed damages.

　　ii.　　*False Light*

An action for false light arises when one "gives publicity to a matter concerning another that places the other before the public in a false light if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in

---

[2] Paragraph 42 of Plaintiffs' Complaint specifically alleges that Defendant Grammas stated the following to the media: "(1) "We had multiple complaints from our officers, our detectives, and honestly supervisors who work directly under him about his decisions and the direction that he's having the officers go." (2) "One lieutenant had made mention that he had a conversation with the captain and the captain went into a briefing room and derogatorily spoke about that lieutenant to the troops." (3)"We also had some information from folks in the briefing rooms that the (sic?) was going in and talking about the PPA specifically, making references to the lawsuit that our officers won for overtime pay, which was $19 million, and alluding to where's the money." (4) Cops have been wronged by Landon Reyes and (5) Reyes treats his subordinates poorly. He maligns them." Comp. ¶ 42.

reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Franchise Tax Bd. of State of California v. Hyatt*, 133 Nev. 826, 844–45, 407 P.3d 717, 735 (2017), rev'd and remanded on other grounds sub nom. F*ranchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 139 S. Ct. 1485, 203 L. Ed. 2d 768 (2019) (citing Restatement (Second) of Torts § 652E (1977), cleaned up).

"[F]alse light, like defamation, requires at least an implicit false statement of objective fact." *Tesla, Inc. v. Tripp*, 487 F. Supp. 3d 953, 969 (D. Nev. 2020) (internal quotations and citation omitted).

For the same reasons set forth above, Plaintiffs' false light claim fails as a matter of law. Because the challenged statements do not constitute false statements of objective fact, but rather reflect non-actionable opinion, subjective evaluation, and rhetorical hyperbole concerning Captain Reyes' leadership and workplace conduct, they cannot support a false light claim. Accordingly, Plaintiffs' false light claim must be dismissed as a matter of law.

### iii. *Intentional Infliction of Emotional Distress*

"Intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct on the part of the defendant; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that the plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Blige v. Terry*, 139 Nev. 607, 618, 540 P.3d 421, 432 (2023) (quoting *Miller v. Jones*, 114 Nev. 1291, 1299-1300, 970 P.2d 571, 577 (1998), internal quotations omitted). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (1998) (internal quotations omitted).

"Liability for emotional distress will not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Candelore v. Clark Cnty. Sanitation Dist.*, 975 F.2d 588, 591 (9th Cir. 1992) (quoting Restatement (Second) of Torts § 46 cmt. d (1965), internal quotations omitted). Notably, this Court has recognized that in the employment context, even the termination of an employee in violation of Nevada public policy does not in itself amount to extreme and outrageous conduct actionable under an intentional infliction of emotional distress ("IIED") theory. *Martin v. Papillon Airways, Inc.*, 810 F. Supp. 2d 1160, 1167 (D. Nev. 2011), as amended

(Feb. 1, 2012) (citing *Hirschhorn v. Sizzler Restaurants Intern., Inc.*, 913 F.Supp. 1393 (D.Nev.1995)). Indeed, this Court has previously held that a business owner's conduct including, pressuring a Jewish employee to participate in a Christian prayer service, singing Christian songs to her, telling her "You know the Jews killed our Savior," and terminating her on Passover after approving her request for leave, did not rise to the level of "extreme and outrageous" conduct required to sustain an IIED claim. *Samuels v. We've Only Just Begun Wedding Chapel, Inc.*, 154 F. Supp. 3d 1087, 1098 (D. Nev. 2015).

Moreover, the United States Supreme Court has held that "public figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of [a] publication . . . without showing in addition that the publication contains a false statement of fact which was made with actual malice, i.e., with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56, 108 S. Ct. 876, 882, 99 L. Ed. 2d 41 (1988) (internal quotations omitted). As discussed above, the Nevada Supreme Court has recognized peace officers are "public officials." *Posadas v. City of Reno*, 109 Nev. 448, 454, 851 P.2d 438, 442 (1993).

Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law. The conduct alleged, namely, criticism of Captain Reyes' leadership through a mobile billboard and related statements, does not approach the level of "extreme and outrageous" conduct required under Nevada law. As set forth above, the statements at issue consist of non-actionable opinion, rhetorical hyperbole, and advocacy concerning workplace conditions and morale. Such conduct, even if unflattering or unwelcome, cannot reasonably be characterized as "utterly intolerable in a civilized community."

As demonstrated by *Martin v. Papillon Airways, Inc.* and *Samuels v. We've Only Just Begun Wedding Chapel, Inc.*, courts have consistently rejected IIED claims based on conduct far more egregious than that alleged here.

Moreover, Plaintiffs' IIED claim independently fails because it is predicated on the same alleged publications underlying their defamation claims. As a matter of constitutional law, a public official may not recover for intentional infliction of emotional distress arising from speech absent a false statement of fact made with actual malice. See *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46

at 56. As discussed above, Plaintiffs have not alleged any actionable false statement of fact against the LVPPA or Executive Board Defendants. Accordingly, Plaintiffs' claim for intentional infliction of emotional distress fails as a matter of law and must be dismissed.

### iv.    Civil Conspiracy & Concert of Action

"An actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1311, 971 P.2d 1251, 1256 (1998) (quoting *Hilton Hotels v. Butch Lewis Productions*, 109 Nev. 1043, 1048, 862 P.2d 1207, 1210 (1993)) (citing *Sutherland v. Gross*, 105 Nev. 192, 196, 772 P.2d 1287, 1290 (1989)).

Similarly, "liability attaches for concert of action if two persons commit a tort while acting in concert with one another or pursuant to a common design." *Dow Chem. Co. v. Mahlum,* 114 Nev. 1468, 1488, 970 P.2d 98, 111 (1998), abrogated in part by *GES, Inc. v. Corbitt*, 117 Nev. 265, 21 P.3d 11 (2001). Concert of action has historically had a narrow application, and the Nevada Supreme Court has indicated that it generally arises in cases where defendants agree, and then proceed, to engage in inherently dangerous conduct that leads to the commission of a tort. *Id.*, *GES, Inc. v. Corbitt*, 117 Nev. 265, 271, 21 P.3d 11, 15 (2001).

Here, the Plaintiffs have alleged that LVPPA and the Executive Board Defendants are liable under a theory of concert of action because they "acted together to commit defamation, defamation per se, intentional infliction of emotional distress, and/or intentional interference with prospective economic advantage." Comp. ¶ 120. Plaintiffs similarly allege that the Executive Board Defendants are liable under a theory of civil conspiracy because the Executive Board Defendants and Undersheriff Walsh acted in concert, with the intent to accomplish an unlawful objective for the purpose of harming Plaintiffs. Comp. ¶ 144.

Here, both theories fail as a matter of law. As an initial matter, Plaintiffs have not even pleaded a claim for intentional interference with prospective economic advantage, despite referencing that theory in conclusory fashion in support of their claim for Concert of Action. Nor have Plaintiffs alleged any facts that could plausibly support such a claim.

More fundamentally, both claims fail because Plaintiffs have not alleged any viable underlying tort. The purported "unlawful" or "tortious" conduct identified in support of these claims, namely, defamation and intentional infliction of emotional distress, fails as a matter of law for the reasons set forth above. Absent an actionable underlying tort, Plaintiffs claims for civil conspiracy and concert of action necessarily fail.

The concert-of-action claim independently fails for the additional reason that Plaintiffs do not, and cannot, allege that Defendants agreed to, or did, engage in any inherently dangerous activity. The Nevada Supreme Court has strongly suggested the doctrine of concert of action is narrowly confined to such circumstances, which are wholly absent here, and Plaintiffs' attempt to expand the doctrine to encompass routine speech is unsupported by Nevada law.

As set forth above, each of Plaintiffs' claims against LVPPA and the Executive Board Defendants fails as a matter of law. Thus, Plaintiffs cannot demonstrate a probability of success sufficient to overcome dismissal under NRS 41.660. Independently, for the same reasons, the Complaint fails to state a claim upon which relief can be granted under FRCP 12(b)(6). Dismissal of each of the Plaintiffs' claims against LVPPA and the Executive Board Defendants is therefore warranted.

> *v.* *Additional Grounds for Dismissal*

Additionally, Plaintiff Alejandra Zambrano's claims independently fail under FRCP12(b)(6) because no cognizable cause of action has been pleaded on behalf of her against LVPPA or the Executive Board Defendants. Although Plaintiffs purport to assert claims jointly against the Defendants for intentional infliction of emotional distress, concert of action, and civil conspiracy, the Complaint is devoid of any factual allegations concerning Zambrano.

Instead, the entirety of the alleged conduct is directed at Plaintiff Reyes. Zambrano's only apparent connection to the allegations is her relationship to Reyes. Comp. ¶ 6. Plaintiffs do not allege that any Defendant made statements about Zambrano, directed any conduct toward her, or otherwise engaged in conduct that could give rise to liability as to her individually.

Absent any well-pleaded facts establishing that Zambrano was the subject of, or directly impacted by, any actionable conduct, her claims fail to satisfy even the most basic pleading

requirements under FRCP 8. Accordingly, all claims asserted on behalf of Plaintiff Zambrano should be dismissed.

Likewise, Plaintiffs have failed to allege any conduct by several of the Executive Board Defendants sufficient to state a claim against them individually. The allegations, at most, establish mere presence or generalized association, which is insufficient as a matter of law to impose liability.

Specifically, the only conduct alleged against Defendant Daniel Coyne is that he was present outside the South Central Area Command ("SCAC") gate on the date the mobile billboard was displayed, attempted to greet employees, and, along with others, approached Captain Reyes' vehicle before backing away. Comp. ¶¶ 29–30.

The allegations against Defendant Scott Nicholas are similarly limited. Plaintiffs allege only that Nicholas attended a single briefing after Captain Reyes had gone on FMLA leave and, along with other board members, made generalized statements regarding Reyes' departure and LVPPA expectations. Comp. ¶ 44.

Defendant Bryan Yant is likewise alleged only to have been present at SCAC on the date the billboard was displayed and present at the subsequent briefing. Comp. ¶¶ 29–30, 44. As to Defendants Abel and Stinnett, Plaintiffs allege that they communicated with LVMPD leadership prior to the billboard and were present at SCAC during the mobile billboard display and, in the case of Abel, at the subsequent briefing (after Reyes had left on FMLA leave). Comp. ¶¶ 27–30, 44.

Notably absent from the Complaint are any specific allegations that these Defendants made actionable statements, directed the content of the billboard, or engaged in conduct independently satisfying the elements of any asserted tort. Instead, Plaintiffs rely on impermissible group pleading and conclusory assertions that Executive Board Defendants acted collectively. That is insufficient under FRCP 8 and fails to meet the pleading standards required by *Twombly* and *Iqbal*.

Accordingly, for this independent reason, all claims against Defendants Nicholas, Yant, Coyne, Abel, and Stinnett should be dismissed under FRCP 12(b)(6).

V.    **Conclusion**

For the foregoing reasons, LVPPA and the Executive Board Defendants have established that the challenged conduct constitutes protected speech under Nevada's anti-SLAPP statutes, and Plaintiffs cannot meet their burden to demonstrate a probability of prevailing on the merits on any

claim. Independently, the Complaint fails to state a claim upon which relief may be granted under FRCP 12(b)(6).

Accordingly, LVPPA and the Executive Board Defendants respectfully request that the Court dismiss all claims against them with prejudice and award such further relief as the Court deems just and proper, including attorneys' fees and costs as permitted by law.

DATED this 27th day of March, 2026

**SGRO & ROGER**

*/s/ Alanna Bondy*
ANTHONY P. SGRO
ALANNA C. BONDY
2901 El Camino Ave., Suite 204
Las Vegas, Nevada 89102

DAVID ROGER, ESQ.
LAS VEGAS POLICE PROTECTIVE
ASSOCIATION
9330 West Lake Mead Boulevard, Suite 200
Las Vegas, Nevada 89134
*Attorneys for LVPPA and the Executive Board*
*Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing SPECIAL MOTION TO DISMISS COMPLAINT PURSUANT TO NRS 41.635 et seq. (ANTI-SLAPP) AND FRCP 12(b)(6) was submitted electronically for filing with the United States District Court, District of Nevada, on the 27th day of March, 2026.  I further certify that service of the foregoing document was accomplished via the CM/ECF system upon all parties and/or counsel of record who are registered CM/ECF users, including:

PAOLA M. ARMENI, ESQ. (Nevada Bar No. 8357)
WILLIAM D. SCHULLER, ESQ. (Nevada Bar No. 11271)
CLARK HILL PLC
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, Nevada 89135
*Attorneys for Plaintiffs*

MARK A. HUTCHISON (NEVADA BAR NO. 4639)
CHRISTOPHER J. LALLI (NEVADA BAR NO. 5398)
HUTCHISON & STEFFEN, PLLC
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
*Attorneys for Defendants*
*Las Vegas Metropolitan Police Department and*
*Undersheriff Andrew Walsh*

  /s/ Alanna Bondy
An employee of Sgro & Roger